By the Court.—Sedgwick, J.
The complaint alleged that the defendant executed thirteen bonds, by each of which it promised to pay to U. A. Murdock and William Butler Duncan, or bearer, one thousand dollars, on the 1st of June, 1888, and semi-annual interest.
The complaint further alleged “that it was agreed by “ and between the defendants and the said U. A. Mur- *176 “ dock and William Butler Duncan', or whoever should “"be the lawful holders of said "bonds, that in case ‘ ‘ default should be made, for the space of four months, “inthe payment of the semi-annual interest, due or to “become due upon either of said bonds, then, and in “that case, the whole principal sum mentioned in all “and each of said bonds should forthwith become due “ find payable.”
The complaint then stated that the plaintiff was the lawful holder and owner of the bonds; that default had been made for the space of four months in payment of interest, and demanded judgment for the principal sum of the bonds in the aggregate, and interest.
The answer made certain issues on the complaint. At the trial, it appeared that the plaintiff was the holder of thirteen bonds, on which the sum of $16,131.88, principal and interest, was unpaid, and that the interest on them had been in default for more than four months before the action had been begun. The bonds were produced with a certificate signed by U. A. Murdock and W. Butler Duncan, trustees, added to each of them. The plaintiff further gave in evidence a mortgage made to secure payment of the bonds. So much of these instruments as affects this motion will be stated in the course of this opinion. The court directed a verdict for plaintiff in the sum unpaid on the bonds, subject to the opinion of the court at General Term.
The plaintiff should have judgment, if it appear that the defendant has made an agreement, on which the plaintiff has a cause of action, that in case of default in payment of interest, the principal sum of the bonds is to become due. Such an agreement may exist, and refer to, and modify, the tenor of the bonds, although it be stated in an instrument separate from the bonds. It is not important to look at the complaint to see if it states that an agreement was made, on which the plaintiff* may bring an action. If the evidence shows the ex *177 istence of such an agreement, a slight amendment of the complaint would conform it to the proof.
We proceed to look in the evidence for the agreement on which the plaintiff relies. The bond itself has no agreement as to the consequences of a default in payment of interest.
The next instrument to be considered is the certificate accompanying the bond and made by Murdock and Duncan, as trustees. It certifies that the foregoing bond is one of a series of two thousand bonds, amounting in the aggregate to two millions of dollars, secured by a first mortgage executed by the defendant, and also by the Hudson Biver West Shore Railroad Company, upon certain property, with power of entry and foreclosure in case of default, “and with provision that “the principal sum secured by said mortgage shall “become due, in case the interest on the bonds remains “ unpaid for four months.”
The plaintiff argues that this is a statement made by persons acting for or with the defendant, in the particular matter of the negotiation of the bonds, and that it binds the defendant in favor of the plaintiff who took the bonds, on faith in the statement that the bonds fell due on default of payment of interest, as covenanted in the mortgage.
There might be a case that would call for such a construction, for instance, where the instrument was evidently made to describe the incidents and liabilities of the bonds severally. In this case the certificate refers primarily to the mortgage, and states.that it is a security for the bonds in a mass. The specific part of it now in question is descriptive of the character of that mortgage as a security and not of the bonds themselves, and it should be construed as referring to the object of the mortgage. To properly understand the particular effects of such a provision, it was necessary that the bondholder should go to the mortgage itself. In effect, the *178 certificate referred the holder of the bond to the mortgage. It states that the provision was in a mortgage, which, it may be assumed, the plaintiff knew was not made to him. In such case the plaintiff would be forced to go to the mortgage to see what his individual rights were under an instrument not made with him.
In looking at the mortgage to see if the plaintiff ever gained from any provision in it, an agreement, which would entitle him to bring this action, the first observation is, that the mortgage, and all the covenants in it, are made by and between the defendant and The Hudson River West Shore Railroad Company, as parties of the first part, and U. A. Murdock and W. B. Duncan, as trustees, or parties of the second part. A part of one of the covenants is, “ that in case default shall be made ££ for the space of four months, in the payment of the semi-annual interest due or to become due upon either “ of said bonds, then, and in said case, the whole princi- ££ pal sum mentioned in all and each of said bonds, shall ££ forthwith become due and payable,” etc. This covenant not having been made with the plaintiff, it must appear' to enable him to bring an action upon it, that it was made to benefit him in that particular way. It must appear that the covenant was made not only to give the trustees a right of action for his benefit, but was made with the trustees to give him a right of action upon it. The language often used by the cases on this subject is, that it must appear that the contract was made for his benefit. As, however, the contract is to be enforced according to the intention of the parties to it, if the parties did not mean that the individual who is to be benefited solely or jointly with others by the operation of the covenant should himself enforce it by action, he cannot by virtue of the covenant bring an action upon it (G-urnsey v. Rogers, 47 N. Y. R. 233; Ricard v. Sanderson, 41 N. Y. 179; Turk v. Ridge, Id. 207; *179 Lawrence v. Fox, 20 N. Y. R. 268; Beers v. Beers, 24 N. Y. R. 187; 1 Chitty Pl. 3 & 4).
First. These words quoted from the mortgage, would by themselves be an agreement, that, in default of payment of interest, each of the bonds referred to should become due (Fellows v. Gilman and others, 4 Wend. 414) so as to give the holder a right of action upon it.
Second. The words do not stand by themselves. They are a part of an instrument with several provisions, and are immediately connected with other words. The sense and meaning of the parties should “be collected ex anteeedentibus and consequentibus, that is “to say, every part of it should be brought into action, “to collect from the whole one uniform and consistent “sense, if that may be done; or, in other words, the con- “ struction must be made upon the entire instrument, 66 and not merely upon disjointed parts of it; the whole “context must be considered in endeavoring to collect “the intention of the parties, although the immediate ‘£ object of inquiry be the meaning of an isolated clause ’ ’ (Broom's L. Max. 514).
Third. The clause in question was left out of the bond. If this intention had been to enable the holder to bring an action on the bond, the usual and direct course would have been to place, the clause in the bond. Therefore, placing it in the mortgage,' suggests an inference that it had some peculiar relation to the object of the mortgage. This became important, only upon the suggestion being confirmed by an inspection of the mortgage.
Fourth. Apart from the general object of securing the payment of the bonds, the mortgage states that it was made to secure the payment of the bonds and “the interest to grow due thereon, equally in proportion to their respective amounts, without preference to the holders of any of said bonds over others, by reason of priority in their issue.” And in executing the power *180 of sale, the trustees are directed to make this equal distribution of the proceeds of sale. If the clause in question meant to permit that, in default of interest, the several bond-holders might bring actions on the bond, a judgment by a diligent bond-holder would or might give him a preference over others, which is at variance with the declared purpose of the mortgage.
As execution on such a judgment could not be levied on the mortgaged property, it may be said that a judgment at law would not disturb an equal distribution under the mortgage. The question then is, did the parties mean, in a mortgage expressly made to secure equal distribution under it, to provide for a priority of the most diligent bond-holders, through judgments that would sweep away all, perhaps, of the property owned by the railroad and not mortgaged? From the mortgage, little if any property of the kind usually owned by railroad corporations, except móney and rights of action, is omitted. Did such a mortgage intend to give a bond-holder the right to absorb, by proceedings on a judgment, the means of going on with the business of the corporation ?
Fifth. The interest clause in the mortgage, is placed in a subdivision wholly (except that clause) devoted to describing, in detail, the powers of the trustees in foreclosing the mortgage. The natural inference is, that it was so placed, because it was specially made with reference to the trustees’ power in that regard. This has peculiar force, when the terms of the power are considered. The mortgage in no other subdivision describes the powers of the trustees to foreclose. By the words, they are only bound to proceed to foreclose “upon the written request of the holder of a majority in amount of such bonds, then outstanding,” and such bonds, as there used, means bonds on which there has been a default on payment of interest. This raises a .doubt in the construction of this instrument, but it *181 strongly shows that the interest clause was inserted with reference to the powers of the trustees under the mortgage, and not with reference to a right of action "by the "bond-holders upon the bonds.
Sixth. The words that have been adduced from the mortgage, and which are used in the complaint, do not stand in a sentence by themselves in the mortgage. The rest of the sentence is, i£ and the lien or encumbrance hereby created, for the security thereof, may be at once enforced.” Then follows the rest of the subdivision, as to the mode in which the security may be at once enforced. This shows the meaning of the parties to be, that, in default in the interest, the principal should fall due, so that the mortgage might be foreclosed for it, as well as for interest. The parties having, by express words, attached a particular consequence to the interest clause, the law presumes they did not intend other consequences to follow. This is by the same principle, by which it is held, that where an instrument contains an express covenant in respect of any subject, no covenants are to be implied in respect to the same subject (Burr v. Stenton, 43 N. Y. R. 464; Vanderkarr v. Vanderkarr, 11 Johns. 122).
Other particulars might be noticed, but if the view taken is correct, sufficient has been said to justify it. The just conclusion, I think, is, that the interest clause was not placed in the mortgage to give the several bond-holders action upon it for the principal of the bonds, but to give the trustees, with whom, in trust for the bond-holders, the covenant was made, a right of action upon it, so that, through foreclosing the mortgage, it might be a more complete security to the bondholders with such a clause, than it would be without it.
The mortgage has been examined only with reference • to the construction of the interest clause. There can be no doubt that the holders of these bonds are left to the *182 hazards that attend "bonds that have no interest clause. We can go no further than to see that the parties agreed that such should be the case.
As the conclusion is that the defendant did not agree that the plaintiff should have an action at law on the bond, as "becoming due, upon default in payment of interest, judgment should be declared for the plaintiff, for the amount of the interest that fell due before the verdict; without the costs of this motion to either party.