## THE METROPOLITAN TRUST COMPANY OF THE CITY OF NEW YORK, Appellant, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Respondent, Impleaded, etc.

*Agreement between two railroad companies as to the management of the companies and the interchange of their business — validity of it — when a promise of one company to the other to advance moneys to pay interest to bondholders cannot be enforced by the bondholders.*

This action was brought for the foreclosure of a mortgage made by the Tonawanda Railroad Company to a trustee to secure the payment of $500,000 of its bonds, by which it granted and sold its railroad, right of way, lands, rails, tracks, bridges, buildings, structures, fixtures and appurtenances, whether then owned and possessed, or thereafter to be acquired, and all franchises, rights, privileges, and all other corporate property. real and personal, of the company. whether theretofore or thereafter acquired by it. After the execution of the mortgage the Tonawanda Company entered into an agreement with the Erie Railroad Company, by which it agreed to deliver to the latter company all its freight and passengers, and to use its influence to promote the interest and business of that company; and further agreed that, for the protection of the Erie Company in rendering assistance to the Tonawanda Company under the contract, the latter would cause to be deposited with the Erie Company a majority of its capital stock, upon which, so long as the management of the Tonawanda Company should be satisfactory to it, the Erie Company would give, or cause to be given, to such representative of the Tonawanda Company as should be designated by it, the right to vote.

The Erie Company agreed to use its influence and exercise its control to promote the interests and the business of the Tonawanda Company, and to make good any deficiencies in the net earnings of the Tonawanda Company to meet the interest upon its bonded indebtedness from time to time as the same became due and payable, and for any and all advances so made by it, with interest thereon, as well as for any and all advances so made to said Tonawanda Company by the Erie Company for other purposes, with interest thereon, the Erie Company was given a first lien upon the railroad, franchises and property of the Tonawanda Company, next after its bonded indebtedness, and a first charge upon its surplus earnings, next after the payment of the accruing interest upon its said bonded indebtedness.

The complaint alleged the performance of such agreement on the part of the Tonawanda Company, a default in the payment of the interest due on its bonds; that the Erie Company failed to make good the deficiencies; that in making such agreement it was understood and intended between the companies that the provision in the agreement that the Erie Company was to make good any deficiencies in the net earnings to meet the interest on its bonded

indebtedness should enure to the benefit and protection of the bondholders of the Tonawanda Company, and asked for a judgment against the Erie Company for any deficiency that might arise on the sale.

*Held,* that while the validity of the agreement made between the two companies was established by the decision of this court in the first department,[*] it was properly held in the present action that the plaintiff was not entitled to a judgment for deficiency against the Erie Company upon the ground that he was not, under the said agreement, entitled to enforce the promise of the Erie Company therein contained, as it was not made for the benefit of the bondholders but only for the benefit of the company itself.

That the undertaking of the Erie Company contained in the said agreement was not embraced in, nor was it conveyed by, the mortgage as a part of the property of the Tonawanda Company.

That, under the agreement, the Erie Company did not occupy the position of a grantee in fee of the property who had assumed the payment of existing liens thereon.

APPEAL by the plaintiff from so much of the judgment entered in Allegany county upon the report of the referee as dismisses the complaint as to the New York, Lake Erie and Western Railroad Company.

This action was brought for the foreclosure of a mortgage made by the defendant, the Tonawanda Valley and Cuba Railroad Company, September 1, 1881, to secure the payment of $500,000 of its bonds, which were soon after issued. The mortgage was made to James D. Fish, as trustee (in whose place the plaintiff was afterwards substituted as like trustee); by this mortgage the company granted and sold its railroad, right of way, lands, rails, tracks, bridges, buildings, structures, fixtures and appurtenances, whether then owned and possessed, or thereafter to be acquired, all locomotive engines, cars, shop, tools, machinery, and all franchises, rights, privileges, and all other corporate property, real and personal, of the mortgagor, whether theretofore or thereafter acquired by it, and whenever default should be made in the payment of the principal or interest, all the tolls, incomes, earnings and profits of the company, and all the estate, right, title and interest, property, possession, claim and demand in law and equity of such company, with the appurtenances. Default was made in the payment of the interest which became due on the bonds, September 1, 1884.

The complaint alleges that on March 12, 1883, the Tonawanda Val-

---

[*] *Tonawanda Railroad Company* v. *New York, Lake Erie and Western Railroad Company* (42 Hun, 496).

ley and Cuba Railroad Company (called the Tonawanda Company)
and the New York, Lake Erie and Western Railroad Company
(called the Erie Company) entered into an agreement "wherein,
after reciting that the Tonawanda Company had been constructed
by parties in sympathy with the Erie Company with a view of con-
tributing to the business of said company, and of protecting it
against hostile lines in process of construction, and after reciting
that the Tonawanda Company may require assistance from the Erie
Company in the completion of its railroad, and in its successful
establishment, operation and maintenance, it was, in consideration
of the premises, agreed as follows: The Tonawanda Company
agrees, first, that it will at all times deliver to the said Erie Com-
pany for transportation, all the freight and passengers that it can
lawfully control or influence, destined to points that can be reached
by way of the railroad of the Erie Company, or its connections,
and will use its influence to promote the interests and the business
of the Erie Company, so far as it can with proper regard to its own
interests; second, that for the protection of the Erie Company in
rendering assistance to the Tonawanda Company, under this contract,
it will cause to be deposited with the Erie Company a majority of
the capital stock of the Tonawanda Company in such manner as
shall be required, upon which, so long as the management of the
Tonawanda Company shall be satisfactory to it, the Erie Company
will give or cause to be given to such representative of the Tona-
wanda Company as shall be designated by it, the right to vote
upon the stock so deposited. The Erie Company agrees, first,
that so far as it can with proper regard for its own interests,
it will use its influence and exercise its control to promote
the interests and the business of the Tonawanda Company;
second, that upon the condition that the corporate control of the
Tonawanda Company shall become and remain vested in the Erie
Company, as above provided, the Erie Company will make good
any deficiencies in the net earnings of the Tonawanda Company to
meet the interest upon its present bonded indebtedness, from time
to time, as the same becomes due and payable, and for any and all
advances so made by it, with interest thereon, as well as for any
and all advances so made to said Tonawanda Company by the Erie
Company for other purposes, with interest thereon, the Erie Com-

pany shall have and is hereby granted a first lien upon the railroad franchises and property of the Tonawanda Company next after its bonded indebtedness aforesaid, and a first charge upon its surplus earnings next after the payment of the accruing interest upon its said bonded indebtedness. This contract shall continue during the corporate existence of the companies parties hereto.

The complaint further alleged performance of such agreement on the part of the Tonawanda Company, a default in the payment of the interest due on its bonds; that the Erie Company failed to make good the deficiencies in the net earnings of the Tonawanda Company, to meet the interest on its bonded indebtedness; that in making such agreement it was understood and intended between the companies that the provision in the agreement, "that the Erie Company will make good any deficiencies in the net earnings of the Tonawanda Company to meet the interest on its bonded indebtedness, should enure to the benefit and protection of the bondholders of the Tonawanda Company;" and that the breaches thereof by said Erie Company passed and enured to the plaintiff as trustee, and as against the Erie Company the plaintiff demanded judgment that it be charged with the deficiency. The referee directed judgment for the foreclosure of the mortgage and sale of the mortgaged property, and determined that the complaint did not state facts sufficient to constitute a cause of action against the New York, Lake Erie and Western Railroad Company, and judgment was entered accordingly.

*Oliver P. Buel*, for the appellant.

*E. C. Sprague*, for the respondent.

BRADLEY, J.:

The questions presented are, first, whether the agreement of March 12, 1883, between the New York, Lake Erie and Western Railroad Company and the Tonawanda Valley and Cuba Company was valid, and if it was, second, whether the plaintiff in this action is entitled to relief against the former company for the benefit of the holders of the bonds of the latter company. The first question, if treated as *res nova*, would require some consideration, but that was before this court, in the first department, in *Tonawanda Rail-*

*road Company* v. *New York, Lake Erie and Western Railroad Company* (42 Hun, 496), and there decided in the affirmative, and further, that if the agreement was *ultra vires*, the defendant was not in a condition to avail itself of that defense. For the purposes of this review, we treat that decision as disposing of this question, and, therefore, do not consider it; and in that view the respondent may be treated as a lienor and a proper party defendant for that reason. But it is assumed here, and will be so treated for the purposes of this review, that the determination by the referee in favor of the defendant was only upon the issue presenting the question of its liability to the plaintiff.

In respect to the inquiry whether a right of action upon the agreement enured to the plaintiff as the representative of the bond-holders, and for their benefit, it is contended by the counsel for the plaintiff: 1. That the undertaking of the New York, Lake Erie & Western Railroad Company contained in it is embraced in the property covered by the mortgage, and as such the right to enforce it is vested in the plaintiff. 2. That such company took possession of the Tonawanda road and assumed the payment of the interest upon the bonds and took the *status* of a grantee in fee, assuming the payment of existing liens and is, therefore, liable to the plaintiff as such trustee. 3. That the agreement to pay the interest was made to the Tonawanda Company for the benefit of its bondholders, and that a right of action enured to them, or for their benefit, which is available to the plaintiff in this action as their trustee. While choses in action are property, the promise furnished by such agreement was not within that which the mortgage, by its terms or purpose, did or was intended to embrace. The character of the mortgaged property is described in general terms, and included in it is all that which may relate to the operation of the railroad and applied to its uses. And on default, all of its income, earnings and profits are charged. The after-acquired property referred to includes every acquisition by the mortgagor of property in character like that specified or within the terms expressed in the mortgage, which are to be construed in view of the purposes contemplated to which its use is to be applied.

A mere valid promise or undertaking, taken by the company to give it support financially by enabling it to escape default for the

non-payment of interest, evidently is not the property which the mortgagee took by force of this indenture, although it was obtained by the mortgagor for its financial relief and support, and its performance would have had the effect to enable it to operate its road. *Philadelphia, W. and B. Railroad Company* v. *Woelpper* (64 Penn. St., 366), goes no further than that. If, however, the New York, Lake Erie and Western Railroad Company may be treated as having in effect the relation like that of a grantee in fee under an agreement by which it assumed the payment of the bonds secured by the mortgage, or so much of it as the net income of the road was insufficient to meet, it may be seen that such company was chargeable to that extent for any deficiency which may arise on the sale in foreclosure, because as between the Erie and the Tonawanda Companies the primary liability would be that of the former and the latter would have the relation of surety. But that does not seem to be the situation of the parties to the agreement as presented by its terms. The property of the Tonawanda Company was not conveyed or transferred to the Erie Company by lease or otherwise, nor was the operation of the road taken from the Tonawanda Company by the agreement. It was contemplated that the latter company would operate the road and that both roads would, so far as their respective interests permitted, be operated for the benefit of each other, but to require the performance of the agreement on the part of the Tonawanda Company the Erie Company took the deposit of a majority of its stock with the right to control the direction of the company represented by it in the event only. that the management was not satisfactory, which meant that this could be done in the event only, that the Tonawanda Company failed to perform the contract on its part. This was a mere remedy provided for protection against its breach. This agreement was, by its terms, to be effectual during the corporate existence of the companies, and was to operate on one no less than on the other of them. The promise of the Erie Company was to advance money in the event and for the purpose mentioned, and it was contemplated that it might make other advances to enable the Tonawanda Company to provide for and operate its road. For all which advances the Erie Company was to have a lien upon the property of the other company subsequent only to that of its bonded indebtedness. The agreement, therefore, does not treat

these advances to make good the deficiency in the net earnings to meet the interest on such indebtedness as payment by the Erie Company of its own debt, but as an advancement of money pursuant to a promise for which, as security, the property of the other company is charged with such lien.

We have not overlooked the provision of the agreement expressing the condition, which makes the performance of the promise of the Erie Company to make good the deficiencies in the net earnings to meet the interest on the bonded indebtedness, dependent upon the fact that the corporate control of the Tonawanda Company should become and remain vested in the Erie Company as therein provided, which by construction and in legal effect was that the Erie Company should retain the means given by the deposit with it of a majority of such stock to require the performance by the Tonawanda Company of the contract on its part. This was in the nature of security furnished by the one company to the other for such performance. The agreement was executory on both sides.· The Erie Company having such security for its performance, agrees to make advances in certain events, and such advances go in protection of the property of the Tonawanda Company against the foreclosure of the lien of its mortgage; and not to discharge any debt of the Erie Company, or any debt on account of which it had any property or fund in trust for any such purpose. In this respect the case comes within the doctrine of *Garnsey* v. *Rogers* (47 N. Y., 233); *Pardee* v. *Treat* (82 id. 385); *Root* v. *Wright* (84 id. 72). The case cited of *Woodruff* v. *Erie Railway Company* (93 N. Y., 609), does not support the contention of the plaintiff's counsel in view of the facts here. There the Erie Railway Company had taken conveyance or lease from Woodruff (the original lessee), of the entire estate of the Erie and Genesee Valley Railroad Company, and assumed the payment of the interest as it became due, and the principal when it matured, of the bonded indebtedness of the original lessor company, which had made a similar grant or lease to Woodruff. The Erie Railway Company in that case had practically the relation of assignee of the lease of the Erie and Genesee Valley Railroad Company to Woodruff, with its personal covenant added for its performance. (*Stewart* v. *Long I and Railroad Company*, 102 N. Y., 601.) There is, therefore, in the case at bar no right of action in the plaintiff as

against the respondent company, resting in subrogation or to charge it with the relation of principal debtor, to any extent, of the interest moneys of the bonds secured by the mortgage. Nor is the company in the situation of guarantor of the collection or payment of any of the moneys so secured.

The remaining question is, whether the holders of the bonds of the Tonawanda Company are beneficiaries of the promise of the respondent company in such sense as to enable the plaintiff to charge it by action in their behalf. We assume that the plaintiff so represents those beneficially interested that it may, in this action to foreclose the mortgage, assert any right of action that has accrued to them in that respect against the New York, Lake Erie and Western Railroad Company. To support this proposition it must appear that the promise of such company was made to the Tonawanda Company for the benefit of its bondholders. It is not sufficient that the performance of the undertaking to pay may necessarily result in benefit to the third party, but to support an action by him upon it such beneficial purpose must be within the terms of the promise. (*Merrill* v. *Green*, 55 N. Y., 270); *Simson* v. *Brown*, 68 id., 355.) And when the promise is made to pay the debt of the promisor to or for the benefit of a third person who is in privity with the promisee, such person may maintain an action upon the promise. Such was the case of *Lawrence* v. *Fox* (20 N. Y., 268), and *Arnold* v. *Nichols* (64 id., 117). In the case at bar the promise was to make good any deficiencies in the net earnings of the promisee company to meet the interest on its bonded indebtedness. The bondholders were in privity with the promisee, and assuming that the promise may be treated as one to pay the amount of such deficiencies to the parties entitled to the interest, the further question arises whether the promise comes within the principle requisite to support an action by the bondholders or their trustees. It has already been suggested that the Erie Company owed no debt to the Tonawanda Company, and held no fund in trust for the payment of the money it had agreed to advance, but that the rights of the contracting parties rested in executory agreement merely, and the one Company held the deposited stock of the other, and the rights it afforded under the agreement, as collateral security for its performance with the additional security which a lien upon the property of the latter company would furnish for advances made.

It is difficult to see how this promise can be brought within the doctrine of *Lawrence* v. *Fox*, as defined and limited by subsequent cases. In that case the promisee lent to the promisor a sum of money, the amount of which the latter promised to pay to the plaintiff. The action there had for its support the promise of the defendant to pay his own debt to the plaintiff; and such debt was created by the advance to him of the money, pursuant to the same agreement of which the promise formed a part. Here there was no debt of the New York, Lake Erie and Western Railroad Company, created as such by the transfer of property to it, or otherwise. That company, by its contract with the Tonawanda Company, executory in its character on both sides, undertook to perform certain stipulations, amongst which was that before mentioned. And this, within the principle of the cases as declared by the courts of this State, must be deemed to have been for the benefit and protection of the Tonawanda Company. Such was the decision of the court in *Garnsey* v. *Rogers*, where, by a provision in a mortgage, the mortgagee assumed and agreed to pay a prior incumbrance on the mortgaged premises. It was held that the prior lienor, although he had the personal liability of the mortgagor, could not maintain an action upon the covenant of the mortgagee. The courts do not extend the doctrine of *Lawrence* v. *Fox*, but limit it to the relation like, in character and legal effect between the parties, to that which the facts in that case produced. That is substantially the proposition announced in the Garnsey case, and repeated in *Pardee* v. *Treat* and *Root* v. *Wright*. After a careful consideration of the argument of the learned counsel for the plaintiff, and all the cases to which our attention has been called, we think, within the rule of the cases following *Lawrence* v. *Fox*, the stipulation referred to of the New York, Lake Erie and Western Railroad Company, in the agreement of March 12, 1883, must be deemed to have been made for the benefit and protection of the Tonawanda Company, and no right of action was conferred by it upon the plaintiff; and that no allegation of the complaint gives support to this action upon such agreement as against the respondent company.

The judgment should be affirmed.

SMITH, P. J., and HAIGHT, J., concurred.

Judgment affirmed, with costs.