VAN BUREN WHEAT et al., Respondents, *v.* HARVEY RICE et al., Appellants.

A creditor of a firm cannot maintain an action upon an agreement made with the firm, by one not a member, to pay a portion — for instance, one-quarter — of its indebtedness; as no one creditor can show from the contract that it was intended for his benefit, or covers any part of his debt.

*Barlow* v. *Myers* (64 N. Y. 41), distinguished.

*Lawrence* v. *Fox* (20 N. Y. 268), distinguished and limited.

A creditor, who has in no way accepted and adopted a promise by a third party, in a contract between him and the debtor, to pay the debt, has no legal interest in the promise which will entitle him to contest an action by the promisor for a reformation of the contract by striking out the promise on the ground of mistake.

As to what action upon the part of the creditor, by way of acceptance or adoption of the promise, will give him a right to interfere and be heard in such an action, *quære.*

(Argued October 20, 1884; decided November 25, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 8, 1882, which dismissed an appeal taken by defendants Rice and others from judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought to reform a contract between plaintiffs and defendant Stotenburgh by striking out certain clauses, which, plaintiffs alleged, had been inserted therein by mistake of the scrivener, and without the knowledge or assent of the parties.

The defendants other than Stotenburgh are creditors of the firm of Stotenburgh, Root & Co., and they alone appeared and answered.

The material facts are stated in the opinion.

*Marsenus H. Briggs* for appellants. The appellants had a beneficial interest in the contract as originally executed. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Claflin* v. *Ostrom*, 54 id. 581; *Arnold* v. *Nichols*, 64 id. 117; *Dingledein* v. *Third*

*Avenue Railroad Co.,* 37 id. 575; *Barker* v. *Bradley,* 42 id. 316; *Hand* v. *Kennedy,* 83 id. 154; *Barlow* v. *Myers,* 64 id. 41.) The appellants having accepted and claimed the benefits accruing to them under the contract, the parties to it could not revoke, or in any way release plaintiffs from the obligations which they had assumed. (*Douglass* v. *Wells,* 18 Hun, 88; *Garnsey* v. *Rogers,* 47 N. Y. 233; *Ranney* v. *McMullen,* 5 Abb. N. C. 246.) As the record shows that the appeal was dismissed, we may fairly assume that the court did not give the facts such an examination as it would have given them if it had felt called upon to pass upon the validity of the judgment. We go by the record not by the opinion. (*Verplanck* v. *Member,* 74 N. Y. 620.)

*John Callister* for respondents. Only a party against whom a judgment is rendered by which he is aggrieved can appeal to reverse it. (Code of Civ. Pro., § 1294; *Reid* v. *Vanderheyden,* 5 Cow. 719; *Idley* v. *Brown,* 11 Wend. 227, 238; *Cuyler* v. *Moreland,* 6 Paige, 273; *Steele* v. *White,* 2 id. 478.) This being an equity action, the costs are in the discretion of the court or referee, even against proper parties, from which there is no appeal. (Code of Civ. Pro., § 3230; *Chapman* v. *Montgomery,* 63 N. Y. 221, see p. 238; *Provost* v. *Provost,* 70 id. 141, see p. 146; *Herrington* v. *Robertson,* 71 id. 280, see p. 284.) Where mutual mistake or fraud is clearly established in the contract as drawn and executed by the parties, the contract should be reformed according to the actual agreement of the parties. (*DeErmand* v. *Chamberlain,* 88 N. Y. 658; *Albany City Savings Inst.* v. *Burdick,* 87 id. 40; *Waring* v. *Somborn,* 82 id. 604; *Kilmer* v. *Smith,* 77 id. 226; *Hay* v. *Star Fire Ins. Co.,* id. 235; *Bottsford* v. *McLean,* 45 Barb. 478; *Welles* v. *Yates,* 44 N. Y. 525; *Coles* v. *Brown,* 10 Paige, 526; *Gillespie* v. *Moon,* 2 Johns. Ch. 585.) The court will interfere only as between the original parties to the contract, or those claiming in privity under them, to reform the same. (Story's Eq. Jur., § 165; *Cody* v. *Potter,* 55 Barb. 463; *Casler* v. *Pitts,* 6 Hun, 659.) The objection that other persons should

have been made parties, if available on the part of the defendants, should have been taken by demurrer or set up in their answer; and not being set up, is waived, pursuant to section 449 of the Code of Civil Procedure. (*Farwell* v. *Importers and Traders' Nat. Bank of New York*, 90 N. Y. 483; *Fosgate* v. *Herkimer Manuf. Co.*, 12 id. 580; *Halsey* v. *Black*, 28 id. 438; *Deputy* v. *Strong*, 37 id. 372.) Parol evidence is always given and received in actions in equity to reform contracts. (Story's Eq. Jur., §§ 154, 155, 156; *Webb* v. *Rice*, 6 Hill, 219; *Gillespie* v. *Moon*, 2 Johns. Ch. 585; *Hoag* v. *Owen*, 57 N. Y. 644; *Hodges* v. *Tenn. Mar. and Fire Ins. Co.*, 8 id. 416; *Despard* v. *Wallbridge*, 15 id. 374; *McMahon* v. *Macy*, 51 id. 155; *Hutchins* v. *Hebbard*, 34 id. 24; *Mathews* v. *Sheehan*, 69 id. 585; *Bowen* v. *Bank of Newport*, 11 Hun, 226; *Murphy* v. *People*, 4 id. 105; *McFadden* v. *Kingsbury*, 11 Wend. 669; *Southworth* v. *Stevens*, 10 Johns. 443; *Coleman* v. *First Nat. Bk. of Elmira*, 53 N. Y. 388; 1 Greenleaf on Evidence, § 89; *Hubbard* v. *Gurney*, 64 N. Y. 457; *Perry* v. *Ransom*, 12 id. 462; *Easterly* v. *Barber*, 66 id. 433; *Trustees* v. *King*, 6 id. 147; *Hutchins* v. *Hebbard*, 34 id. 24; *Chester* v. *Bank of Kingston*, 16 id. 336, 343; *Bell, Rec'r*, v. *Shibley*, 33 Barb. 610; *Raynor* v. *Page*, 2 Hun, 652.)

FINCH, J. The plaintiffs and the defendant Stotenburgh signed an agreement in writing containing two clauses which were afterward claimed to have been inserted by mistake.

At the date of its execution the firm of Stotenburgh, Root & Co. was indebted to several creditors, and, continuing its business thereafter, contracted other and additional debts to the same and other persons. Both classes of creditors are among the defendants in this action. The written agreement stipulated that Stotenburgh sold to Wheat & Salisbury, the present plaintiffs, "the equal undivided one-quarter of the plaster mill and quarries, and one-quarter of all the personal property of the firm of Stotenburgh, Root & Co.," in consideration whereof Wheat & Salisbury agreed to pay to Stotenburgh $3,000, and "to assume and pay one-quarter of

the present incumbrance on the property," "and one-quarter of all the indebtedness of the firm of Stotenburgh, Root & Co., of which the said Isaac Stotenburgh is a member, as the same may become due and payable." The written instrument contained also a further stipulation, "that by reason of said purchase the said Van Buren Wheat and Joseph F. Salisbury become members of said firm of Stotenburgh, Root & Co., to the amount of one-quarter interest in all the real and personal property belonging to the said firm of Stotenburgh, Root & Co., and liable to pay the indebtedness of the said firm in the same manner and to the same extent as if they had been members of the original firm of Stotenburgh, Root & Co." When, some considerable time after its date, the plaintiffs discovered that the instrument which they had signed contained the two clauses in question, they commenced an action in equity to reform the writing by striking out the promise to pay one-quarter of the firm indebtedness, and the agreement to become a partner. Stotenburgh was made a defendant, and also the creditors of the firm. The allegations of the complaint relating to and affecting the latter were that they "have given out and claim that these plaintiffs are liable *as members of said firm* to pay each and every of said promissory notes, and they severally *threaten* to sue *the said firm*, and these plaintiffs *as members of said firm, upon* their respective promissory notes, and the said Mary A. B. Swan has sued the said firm and these plaintiffs upon her said promissory note of $142.50, which suit is still pending and undetermined." The complaint gave the date of the last-named note, which was April 1, 1875, while the written agreement was dated the November previous. The relief specifically asked against these creditors was that they be restrained until the determination of the action from prosecuting the plaintiffs " on their said promissory notes." It is to be observed, therefore, that the complaint makes no reference to any right of action of the creditors except that against the firm and the plaintiffs as members of the firm; and there is neither averment, admission, nor the least intimation that the creditors who were such at the date of the

writing had accepted or adopted, by word or act, the promise contained in it to pay the existing indebtedness of the firm; nor is any relief asked restraining them from suing on such promise. The creditors answered. They, on their part, make no allusion to that promise; they do not allege that they accepted or adopted it, or claim any right founded upon it; but on the contrary, put their rights explicitly upon the ground of plaintiffs' liability as members of the firm, and the only allegation even remotely or incidentally referring to the debts of the firm which antedated the written agreement was that after that date each had " extended to the said firm of Stotenburgh, Root & Co. credit, and loaned moneys, or *continued* the loan of moneys previously loaned to said firm," relying on knowledge of the agreement " and the partnership of said plaintiffs." The pleadings, therefore, did not assert any acceptance or adoption by the creditors at any time of the special promise to pay the debts existing at the date of the agreement, but on the contrary raised only the question whether the plaintiffs had actually become partners, or had made themselves liable by acting or holding themselves out as such. Upon the trial the plaintiffs gave evidence confined to the question of reformation, and when they rested, the defendants moved for a nonsuit upon the express ground, among others, that " the complaint does not allege, and plaintiffs have failed to show, that the claims of the defendants set forth in the complaint are based on the contract sought to be reformed, or that the defendants threaten to set up in their actions at law the contract sought to be reformed."

Nowhere in the defendants' evidence was there proof of any act or word of the creditors accepting or adopting the promise to pay debts; but on the contrary, at the close of the case the motion for a nonsuit was repeated upon all the grounds first stated, including that which denied, on behalf of the creditors, any assertion in the pleadings or proof that an action had been threatened upon the contract.

Laying aside, then, for later consideration, that part of the writing which purported to make plaintiffs partners in t

firm of Stotenburgh, Root & Co., and confining our attention to the promise of plaintiffs to pay one-quarter of the debts of the firm, standing alone and by itself, there are disclosed two reasons why that promise gave the creditors no rights whatever, and why they had no legal interest in the action to reform the contract.

The first is that no promise was made to pay any single one of such creditors, or for the benefit of any one of them. The promise was made *to* Stotenburgh, and for his benefit and that of the firm alone. The plaintiffs agreed to pay one-quarter of the firm's indebtedness. If the next day they had ascertained its entire amount and paid over to Stotenburgh, Root & Co. one-quarter of that total their contract would have been fulfilled. They would have put back into the firm assets precisely what they had agreed to give for what was taken out. Or if, again, there were ten creditors, all of whose debts were due, and one of them held one-quarter of the total, the plaintiffs might pay him and owe nothing to the other nine, or pay a part of the nine and owe nothing to the rest. In other words, no one, nor any specific and identical creditor, could so show, in advance of payment, that the promise was intended for his benefit, or covered any part of his debt as to establish that he could maintain an action on such promise. Whether it would benefit him or not depended wholly upon the undisclosed option of the plaintiffs down to the moment at which they were required to pay "one-quarter of the indebtedness" of the firm. It would be a very great extension of the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268), to give a right of action to a creditor for whose benefit the promise might, or might not have been made. In *Barlow* v. *Myers* (64 N. Y. 41), where the promise was to pay generally "the debts of Randall & Williams, without specification of the particular debts, or ⁄     ng the creditors of the firm," attention was called to the f⁄     in this respect the case differed from all the cases i⁄     e right of action had been sustained in behalf of th⁄     .ty. But while there it was possible to say that     ⸱ᴜditors were sufficiently identified as belonging to a

class all of whom were to be paid, here, on the other hand, no class is named or described, and who was to be paid by the promisor, or to what extent, is left absolutely uncertain and undetermined. We prefer to restrict the doctrine of *Lawrence* v. *Fox* within the precise limits of its original application.

But there is another reason for saying that the defendant creditors had no legal interest in the promise of plaintiffs which could entitle them to contest the action for a reformation of the contract. We held in *Dunning* v. *Leavitt* (85 N. Y. 35) and again in *Crowe* v. *Lewin* (95 id. 423), that the right of the third party benefited by the promise, at least before he had accepted and adopted it, was of such derivative and imperfect character, if, indeed, it attached at all, and was so subject to the relations and equities of the original promisor and promisee, that the destruction of the consideration of the promise in the one case, and the rescission or annulment of the contract in the other, in actions to which the alleged beneficiary was not a party and in which he had not been heard, barred and prevented him from any right of action upon the promise. If we have construed the pleadings and read the evidence correctly, that is the case here. There had been no acceptance or adoption by word or act. Something of that kind was essential. (*Turk* v. *Ridge*, 41 N. Y. 206; *Garnsey* v. *Rogers*, 47 id. 242; *Vrooman* v. *Turner*, 69 id. 285; *Knickerbocker Life Ins. Co.* v. *Nelson*, 78 id. 151; *Brewer* v. *Dyer*, 7 Cush. 337.) What it should be, whether a bare assent communicated to the promisor, or some decisive act of the third party by which his original position and rights have been changed in reliance upon the promise, before the equities between the contractors become burdened with a right to interfere and be heard belonging to the third party, we do not now decide because it is wholly unnecessary. It is enough that these creditors neither by word nor act in any manner assented to or adopted the promise before the action for its reformation. They were, therefore, not necessary parties to that action, had no legal interest in it, and were properly denied the right of appeal.

It only remains to consider whether the other clause of the

writing which purported to make the plaintiffs partners in the firm of Stotenburgh, Root & Co. gave the creditors a right to resist the reformation of the writing. They had no legal interest in the question. The judgment rendered does not at all bar their right to sue the plaintiffs as members of the firm of Stotenburgh, Root & Co., to establish that they were partners, or had so held themselves out as such as to have become liable. Relatively to that ground of action the writing was but evidence, and the creditors had no vested right to prevent the parties to it from making it speak the truth. The opinion of the General Term states this proposition so clearly that the appellants here practically concede it ; but insist that " instead " of resting upon the ground of partnership, " the appellants seek to recover upon the contract itself for indebtedness included within its terms." We have already considered that ground of interference by the creditors and decided against it. It follows that the General Term committed no error in dismissing the appeal.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Judgment affirmed.